**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

<table>
<tr><td>

_____<br>
)<br>
**AHMAD SAYED HASHIMI,**   )<br>
)<br>
      **Petitioner,**   )<br>
)<br>
  **v.**   )<br>
)<br>
**UNITED STATES**   )<br>
      **Respondent.**   )<br>
)<br>
_____)

</td><td>

**Case No.:  1: 16-cr-135-LO-1**<br><br>
**MOTION PURSUANT<br>
TO 28 U.S.C. § 2255**<br><br>
_____

</td></tr>
</table>

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PETITIONER'S MOTION PURSUANT TO 28 U.S.C. § 2255</u>**

**David Benowitz
VSB # 91194
Price Benowitz LLP
409 Seventh Street, NW
Suite 200
Washington, DC  20004
(202) 271-5249 (c)
(202) 664-1331 (f)
david@pricebenowitz.com**

*Counsel for Petitioner Ahmad Sayed Hashimi*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY,
PURSUANT TO 28 U.S.C. § 2255 ..........................................................................1

STATEMENT OF THE CASE....................................................................................1

FACTUAL BACKGROUND AND PRELIMINARY STATEMENT ..........................4

DEFENDANT'S GROUNDS FOR § 2255 MOTION ..................................................9

ARGUMENT ...........................................................................................................13

I:   MR. HASHIMI'S TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE.....13

   A.  Relevant Legal Standard. .............................................................................13

   B.  Ground I: ......................................................................................................14

II:  TRIAL COUNSEL'S PERFORMANCE FELL WELL BELOW THE RANGE
     EXPECTED OF REASONABLE, PROFESSIONAL COMPETENT ASSISTANCE
     OF COUNSEL SUCH THAT HIS DEFICIENT PERFORMANCE PREJUDICED
     MR. HASHIMI .................................................................................................16

   A.  Relevant Legal Standards .............................................................................16

      1.  Ineffective Assistance of Counsel.................................................................16
      2.  Failure to Investigate....................................................................................18
      3.  Failure to Subject the Prosecution's Case to Meaningful Adversarial Testing ...........19

   B.  Ground 2: ......................................................................................................19

   C.  Ground 3: ......................................................................................................21

   D.  Ground 4: ......................................................................................................22

   E.  Ground 5: ......................................................................................................22

   F.  Ground 6: ......................................................................................................23

   G.  Ground 7: ......................................................................................................24

H.  Ground 8: ............................................................................................................24

I.   Ground 9: ............................................................................................................25

J.   Ground 10: ..........................................................................................................25

K.  Ground 11: ..........................................................................................................25

L.   Ground 12: ..........................................................................................................26

M. Ground 13: ..........................................................................................................27

CONCLUSION ...............................................................................................................28

## **TABLE OF AUTHORITIES**

<u>**CASES**</u>                                                                                                            <u>**PAGE**</u>

*Clay v. United States*,
  537 U.S. 522 (2003)...........................................................................................3

*Gonzales v. United States*,
  553 U.S. 242 (2008).........................................................................................13

*Husband v. U.S.*,
  2013 WL 3479619 (N.D. W.Va., Jul. 10, 2013)...............................................3

*Jae Lee v. United States*,
  137 S. Ct. 1958 (2017).....................................................................................14

*Knight v. Spencer*,
  447 F.3d 6 (1st Cir 2006).................................................................................15

*McCoy v. Louisiana*
  138 S. Ct. 1500 (2018)..............................................................................2, 3, 13

*Missouri v. Jenkins*,
  495 U.S. 33 (1990).............................................................................................3

*Padilla v. Kentucky*,
  559 U.S. 356 (2010).........................................................................................17

*Roe v. Flores-Ortega*,
  528 U.S. 470 (2000).........................................................................................15

*Strickland v. Washington*,
  466 U.S. 668 (1984)......................................................................16, 17, 18, 19

*United States v. Basham*,
  561 F.3d 302 (4th Cir. 2009) ...........................................................................27

*United States v. Chronic*,
  466 U.S. 648 (1984)....................................................................................16, 19

*United States v. Hashimi*,
  139 S. Ct. 377 (2018)..........................................................................................1

*United States v. Hashimi*,
  718 Fed. Appx. 178 (4th Cir. 2018)............................................................1, 2, 3

*United States v. Hashimi*,
  1:16-cr-135-LO-1 (E.D. Va. Dec. 16, 2016.......................................................1, 2, 4

*United States v. Martinez*,
  277 F.3d 517 (4th Cir. 2002) ...................................................................................27

*United States v. Rivera*,
  900 F.2d 1462 (10th Cir. 1990) ...............................................................................27

*United States v. Russell*,
  34 Fed. Appx. 927 (4th Cir. 2002) ...........................................................................27

*United States v. Tucker*,
  716 F.2d 576 (9th Cir. 1983) ...................................................................................18

*Wiggins v. Smith*,
  539 U. S. 510 (2003)...........................................................................................17, 18

*Williams v. Taylor*,
  529 U.S. 362 (2003)..................................................................................................19

*Wood v. Zahradnick*,
  578 F.2d 980 (4th Cir. 1978) ...................................................................................18

## STATUTES

18 U.S.C. § 1201 (a)(1) ..........................................................................................................2

18 U.S.C. § 2261 (a)(2) ..........................................................................................................2

21 U.S.C. § 841 (a)(1)..........................................................................................................1, 2

21 U.S.C. § 846....................................................................................................................1, 2

28 U.S.C. § 2255........................................................................................................... passim

## CONSTITUTION

U.S. Const. amend. VI .................................................................................................. *passim*

## OTHER AUTHORITIES

American Bar Association, Standard 4-4, 1................................................................................18

iv

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S
MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE
BY A PERSON IN FEDERAL CUSTODY, PURSUANT TO 28 U.S.C. § 2255**

Petitioner Ahmad Sayed Hashimi, by and through undersigned counsel, respectfully submits this Memorandum of Law in Support of Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence By a Person in Federal Custody, Pursuant to 28 U.S.C. § 2255, because the evidence establishes probable cause to believe that he is detained without lawful authority. Petitioner's motion is his first such motion in a federal court.

Mr. Hashimi intends that each paragraph or subparagraph of his motion, or any amendment thereto, be deemed to incorporate by reference every other paragraph or subparagraph of his motion or any amendment thereto. Mr. Hashimi further incorporates by specific reference all motions filed or to be filed in this Court on his behalf in this case. Mr. Hashimi further incorporates herein by specific reference the complete record of Criminal Case No. 1:16-cr-135-LO-1, *United States v. Hashimi*, (E.D. Va., Dec. 16, 2016), including all pleadings filed therein, and Petitioner's record on direct appeal in the United States Court of Appeals for the Fourth Circuit (*United States v. Hashimi*, 718 Fed. Appx. 178 (4th Cir. (2018)), [Record No. 16-4846], and on appeal to the Supreme Court of the United States (*Hashimi v. United States*, 139 S. Ct. 377 (2018)), including the Unpublished Opinion from the United States Court of Appeal for the Fourth Circuit on remand from the Supreme Court of the United States. *Hashimi v. United States*, 16-4846, ECF Doc. No. 66 (Apr. 25, 2019).

## STATEMENT OF THE CASE

Ahmad Sayed Hashimi was convicted in the United States District Court for the Eastern District of Virginia, Alexandria Division, after a jury trial, of: conspiring to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), 846 (2012) (Count 1); conspiring to distribute

cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846 (Count 2); kidnapping, in violation of 18 U.S.C. § 1201(a)(1) (2012) (Count 3); and interstate domestic violence, in violation of 18 U.S.C. § 2261(a)(2) (2012) (Count 4).  *United States v. Hashimi*, 1:16-cr-135-LO-1, ECF No. 94 (December 16, 2016).  This Court sentenced him to three hundred (300) months of incarceration, consisting of a term of two hundred forty (240) months on Counts One and Two, a term of three hundred (300) months on Count three, and one hundred twenty (120) months on Count four, all to be served concurrently, followed by five (5) years supervised release, consisting of a term of three (3) years on Counts One, Two, and Four and a term of five (5) years on Count three, all to be served concurrently.  *Id.* at 2-3.  This Court further imposed a special assessment four hundred dollars ($400.00).  *Id.* at 5.

Mr. Hashimi timely filed his Notice of Appeal on December 21, 2016.  *United States v. Hashimi*, 1:16-cr-135-LO-1, ECF No. 93.  On January 22, 2018, the United States Court of Appeals for the Fourth Circuit affirmed the district court's judgment.  *Hashimi v. United States*, 16-4846, ECF Doc. No. 48.  On February 8, 2018, Mr. Hashimi filed a *pro se* motion for rehearing *en banc*.  *Id.*, ECF Doc. No. 51.  On March 12, 2018, the appellate court denied Mr. Hashmi's motion for rehearing *en banc*.  *Id.*, ECF Doc. No. 53.

On June 9, 2019, Mr. Hashimi filed a *pro se* petition for writ of certiorari, which was entered on the Supreme Court docket as No. 18-5184 on July 10, 2018.  *Id.*, ECF Doc. No. 57.  *See* Exhibit A.[1]  Mr. Hashimi asked the Supreme Court that his case be remanded for review and decision by the Fourth Circuit Court of Appeals in light of the United States Supreme Court's decision in *McCoy v. Louisiana,* 138 S. Ct. 1500 (2018).  On October 17, 2018, the Supreme Court of the United States granted Mr. Hashimi's petition for writ of certiorari, vacated his

---

[1] Mr. Hashimi's petition for writ of certiorari.

judgment, and remanded the case to the United States Court of Appeals for the Fourth Circuit for further consideration in light of *McCoy v. Louisiana*, 584 U.S. ___ (2018).  *Hashimi v. United States*, 16-4846, ECF Doc. No. 58.  On April 25, 2019, the United States Court of Appeals for the Fourth Circuit again affirmed the district court's judgment.  *Id.*, ECF Doc. No. 66.  On June 7, 2019, Mr. Hashmi filed a *pro se* motion for *en banc* review of the appellate court's decision.  *Id.*, ECF Doc. No. 74.  Accordingly, the appellate court stayed the mandate pending the outcome of Mr. Hashimi's motion for *en banc* review.  *Id.*, ECF Doc. No. 75.  On July 2, 2019, the United States Court of Appeals for the Fourth Circuit denied Mr. Hashimi's motion for *en banc* review.  *Id.*, ECF Doc. No. 76.

No petition for certiorari was thereafter filed with the Supreme Court.  When Mr. Hashimi's request for rehearing *en banc* was denied on July 2, 2019, he had ninety (90) days to file a writ of certiorari with the Supreme Court of the United States.  Having not done so, his conviction became final on September 30, 2019.  The instant petition, filed within one (1) year of September 30, 2019, is timely filed.  *See* 28 U.S.C. § 2255(f)(1) (a "one year period of limitation shall apply to a motion under this section. The limitation period shall run from…the date on which the judgment of conviction becomes final."); *Clay v. United States*, 537 U.S. 522, 525 (2003) ("a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."); Sup. Ct. R. 13.3 (certiorari petition must be filed within 90 days after the entry of the judgment); *Missouri v. Jenkins*, 495 U.S. 33, 34 (1990) (a petition for rehearing tolls the running of the 90-day period); *Husband v. United States*, No. 1:08-cr-16 (JPB), 2013 WL 3479619, at *4 (N.D. W.Va. July 10, 2013) (where petitioner's request for rehearing *en banc* was denied on August 31, 2010, petitioner had 90 days to file for writ of certiorari, and, after not doing so, conviction was final

on November 29, 2010).  *See also* this Court's Order denying Mr. Hashimi's *pro se* Motion for

Extension of Time to File a petition for habeas corpus pursuant to 28 U.S.C. § 2255, confirming

that Mr. Hashmi's one-year limitation period expires on September 30, 2020.  *United States v.*

*Hashimi*, 1:16-cr-135-LO-1, ECF No. 132.

## FACTUAL BACKGROUND AND PRELIMINARY STATEMENT

Following a three day trial held on September 26-28, 2016, Ahmad Hashimi was

convicted of engaging in a conspiracy with multiple co-conspirators to distribute cocaine

between 2009 and 2015.  He was also convicted of engaging in a prescription fraud conspiracy

with multiple co-conspirators, including his girlfriend Hilina Damte, to distribute oxycodone

between 2011 and 2015.  Finally, he was convicted of interstate domestic violence and

kidnapping related to Ms. Damte.  At trial, the government portrayed him as a controlling,

violent boyfriend who forced a reluctant Ms. Damte (a drug user with prior convictions) to

participate in his fraudulent prescription scheme.  *See* 9/26/16 Tr. 77.[2]  The government

contended that he was a shrewd, calculating, and cautious drug dealer, who avoided delivering or

carrying his own drugs so he wouldn't get caught, that he didn't carry a gun so that he couldn't –

---

[2]  Transcripts in this memorandum are part of the record in this case.  Citations are by the
date of the proceeding and the page number on which the citation begins for that proceeding,
e.g., 9/26/16 Tr. 77, *i.e.*, September 26, 2016 at page 77.  The transcript of the Preliminary and
Detention hearing held on April 15, 2016, is entered on the docket as ECF No. 107.  Mr.
Hashimi's arraignment was held on June 24, 2016.  The transcript of the arraignment is entered
on the docket as ECF No. 108.  A Motions Hearing was held on September 22, 2016, and the
transcript is entered on the docket as ECF No. 114.  A Status Conference was held on September
23, 2016, and the transcript is entered on the docket as ECF No. 109.  The trial in this case lasted
three (3) days, September 26, 27, and 28, 2016.  The trial transcripts were published on the
docket in this case in three volumes, each volume corresponding, respectively, to the day of trial,
and each further identified, respectively, by an ECF No.: Volume 1, September 26, 2016, ECF
No. 110; Volume 2, September 27, 2016, ECF No. 111; and, Volume 3, September 28, 2016,
ECF No. 112.

if caught – be charged with related gun charges, and while never employed always held and spent large amounts of cash.  *Id.* at 78; 9/28/16 Tr. 614.

      Federal Bureau of Investigation ("FBI") Special Agent Andrew B. Lenhart, the lead agent who investigated this case for three years, testified that he had prepared over 300 to 400 reports, had conducted hundreds of interviews, reviewed hundreds of hours of jail calls, all related to the over 35,000 pills that had allegedly been distributed by Mr. Hashimi and his co-conspirators during the prescription fraud conspiracy. 9/27/16 Tr. 444-45.  Special Agent Lenhart further testified that he had conducted two controlled drug buys during which Mr. Hashimi sold drugs to an FBI confidential informant.  *Id.* at 445.  Special Agent Lenhart testified that one recorded, controlled purchase took place on July 23, 2015.  *Id.* at 449-56.  The government recovered ten (10) morphine pills and three and one-half (3.5) grams of powdered cocaine from the controlled purchase.  *Id.* at 461.  The second controlled buy took place on July 29, 2015, from which was recovered a white powdery substance that turned out to be a non-controlled substance.  *Id.* at 464-66.  The government's forensic expert, Drug Enforcement Agency ("DEA") senior chemist, Erika Derks, testified to the analyses of the substances obtained from the two controlled buys. *Id.* 408-22.  A search warrant for Mr. Hashimi's residence was issued on April 8, 2016.  *See* Exhibit B.  Special Agent Lenhart and other law enforcement officers executed the search warrant on April 12, 2016.  9/27/16 Tr. 469-70.  A sock containing $8,100 in cash was recovered in the laundry room.  *Id.* at 470.  No drugs or drug paraphernalia were recovered from the residence.  *Id.* at 510.  Mr. Hashimi was arrested during the execution of the search warrant.  *See* Exhibit C.

      The government presented testimony from multiple co-conspirators in the instant conspiracy, all of whom received benefits for their cooperation for testifying against Mr.

Hashimi.  The government also presented testimony from other individuals who had criminal charges pending in other cases, who were looking to have their pending jail sentences reduced based upon their testimony against Mr. Hashimi.  *Id.* at 217-307; 318-336; 348-80;389-407; 435-444.  One government witness, Waheed Azimi, who was on the same cell block as Mr. Hashimi during April 2016, testified that had known Mr. Hashimi for years before trial, and that Mr. Hashimi had sold him drugs on multiple occasions, including one occasion where Mr. Hashimi had an associate with him who flashed a gun at Mr. Azimi.  *Id.* at 389-407.

To establish Mr. Hashimi's profile as a typical drug dealer who never worked but who also frequently held and spent large amounts of cash, the government presented testimony from Melvin Walker, a tax representative from the Virginia Employment Commission.  Mr. Walker testified that Mr. Hashimi had not filed any Virginia income taxes for the years covering the alleged conspiracy, concluding that Mr. Hashimi had no regular employment in the Commonwealth during that time.  *Id.* at 385-88.  Sandra Dovalina, a FBI forensic accountant, testified that she analyzed Mr. Hashimi's bank accounts from December 2010 through April 2012 and found no sources of payment to Mr. Hashimi during this time period from employers.  *Id.* at 429.  Ms. Dovalina did, however, testify that there were federal tax refunds deposited into Mr. Hashimi's bank accounts.  *Id.* at 428.

Hilina Damte, the government's key witness and Mr. Hashimi's former girlfriend, testified from her alleged firsthand knowledge of Mr. Hashimi selling cocaine on multiple occasions to multiple individuals and from her firsthand knowledge of the prescription fraud scheme.[3]  She also testified as to the kidnapping and domestic violence charges.  Ms. Damte

---

[3] At the time of trial, she was serving a 42-month sentence for conspiracy to distribute oxycodone. 9/26/16 Tr. 90-91.  At trial, it was revealed that she had been previously convicted of

testified that she first met Mr. Hashimi in the summer of 2011 through a drug connection and began dating and running his drug business with him. 9/26/16 Tr. at 91, 105-108. They used drugs together as well. 9/27/16 Tr. at 218. She had a great deal of authority in their "drug business," as no other individual except Ms. Damte drove Mr. Hashimi, delivered cocaine for him, returned money or helped him prepare for resale. 9/26/16 Tr. at 144.

Ms. Damte personally obtained Oxycodone with fake prescriptions. 9/26/16 Tr. at 154-55. She testified that Mr. Hashimi's contact within the dental office that was providing the conspiracy with the fake prescriptions was an individual named "Sharon." 9/26/16 Tr. 121; 9/27/16 Tr. 240. Ms. Damte identified thirteen co-conspirators who either bought or sold drugs from/to Mr. Hashimi. 9/26/16 Tr. at 113-141. She further testified that out of 12 runners working for the fraudulent prescription conspiracy, only two of them were recruited by Mr. Hashimi. *Id.* at 156-57. Mr. Hashimi rarely accompanied runners to pick up pills from pharmacies. *Id.* at 159. Ms. Damte also admitted at trial that she often sold pills that she obtained through prescription fraud without telling Mr. Hashimi. *Id.* at. 161.

Ms. Damte also testified about Mr. Hashimi's violent behavior towards her. *Id.* at 168-69. She testified that Mr. Hashimi began beating her up when he got mad – around six months into their relationship. *Id.* at 168-69. Ms. Damte testified he would strike her with both an open hand or closed fist, on both her body, and her face. *Id.* at 169-70. She could not provide a specific reason that would trigger his anger. *Id.* at 170. Ms. Damte also testified that the police responded to her apartment for domestic violence several times. *Id.* at 175. Tara Finkle, a police

---

shoplifting in 2008, and had been previously arrested for prescription fraud in Fairfax, Virginia. 9/27/16 Tr. 226.

officer from Alexandria Police Department, who went to Ms. Damte's residence on October 7 and 8, 2013, also testified for the government during the trial. 9/27/16 Tr. at. 343.

Lastly, Ms. Damte testified about the kidnapping and domestic violence incidents which occurred on November 8, 2013. 9/26/16 Tr. at 185-86.   She testified that on that night she was with Dina Traitouros, Chris Bryant, and Jordan Taylor. *Id.* at 185.  When they arrived at an apartment complex parking lot, a car pulled up behind Ms. Traitouros's car in which they were riding. *Id.* at 186-87.  She testified that Mr. Hashimi and other individuals got out of the car and approached the car Ms. Damte was in.  *Id*. at 186. She testified that Mr. Hashimi beat her up and took her to his car. *Id.* at 188. He then drove to D.C. via I-395. *Id.* at 190. While Mr. Hashimi was driving, he asked where she hid the cocaine, and she replied that Chris had it. *Id.* at 191. At some point, she jumped out of the car and was able to run away from the scene. *Id.* at 193.  She testified that after locating police, she was transported to a hospital in the District of Columbia. *Id.* at 194-95. While she was at the hospital, she told detectives that it was "Baker," not Mr. Hashimi, who had assaulted her. *Id.* at 195, 9/27/16 Tr. at 224-225.  Traitouros, Bryant, and Taylor all testified at trial, essentially corroborating Ms. Damte's story.  9/27/16 Tr. at 295-308; 318-335.  Alexandria Police Department Detective Thomas Buckley testified that when he interviewed Ms. Damte at the hospital she told him it was Abubaker[4] who had kidnapped and attacked her, not Mr. Hashimi, and that she wanted Abubaker prosecuted. *Id.* at 313.

After the government rested its case in chief, the defense called three witnesses: Olivia Lee, 9/28/16 Tr. at 518; Jacqueline Alfaro. *id.* at 530; and Mohamed Abubaker. *id*. at 542. Olivia Lee testified that she purchased Oxycodone pills from Ms. Damte almost every day and was one of her runners. *Id*. at 522.  Jacqueline Alfaro testified Ms. Damte tutored her in the scheme and

---

[4] Abubaker Abubaker (known as "Baker").

provided her compensation. *Id*. at 532.  Mr. Abubaker confirmed that Ms. Damte was the one who was making fraudulent prescriptions, distributing Oxycodone, and controlling runners. *Id*. at 543-45.

During closing argument, the prosecution spent half of its time describing the relationship between Mr. Hashimi and Ms. Damte before it discussed the four counts Mr. Hashimi was eventually convicted of, ultimately concluding by stating that Mr. Hashimi was a "beater of women." *Id.* at 611; 617.

During the defense's closing argument, without consulting Mr. Hashimi, Mr. Hashimi's trial counsel argued against guilt for the two conspiracy drug counts but conceded Mr. Hashimi's guilt for the kidnapping and interstate domestic violence counts. *Id*. at 620.  Counsel stated:

> The last few days I've done very little, if no questioning relating to the kidnap and domestic violence. Shame on Mr. Hashimi, shame on him. I am sure he was humiliated that Hilina was cheating on him behind his back, I am sure, but that doesn't excuse what he did. And if he were allowed to, he would accept responsibility for that right in front of you.

*Id*.

After the Government finished its rebuttal, the court released the jury for deliberation at 3:09 p.m.  *Id.* at 629.  At 4:08 p.m., the court received a jury question regarding the buyer-seller relationship with respect to conspiracy. *Id.*  Following the Court's response to the jury, the panel announced that it had reached its verdict at 4:40 pm.  *Id.* at 636.

## DEFENDANT'S GROUNDS FOR § 2255 MOTION

**Introduction**

Mr. Hashimi's Motion asserts numerous claims of ineffective assistance of counsel against Bruce A. Johnson, Jr., Esquire.[5]   Mr. Johnson represented Mr. Hashimi in this matter

---

[5] VSB #36910

from the time of his appointment as counsel on April 15, 2016, throughout the proceedings in this case from that date, including at trial, until this Court struck his appearance on December 28, 2016. *Id.*, ECF No. 100. Mr. Hashimi's grounds for his claims are as follows:

**Ground 1:** Trial counsel was constitutionally ineffective when during his closing argument to the jury, without Mr. Hashmi's consent, trial counsel conceded Mr. Hashimi's guilt to Counts Three and Four and did not defend these counts.

**Ground 2:** Trial counsel unreasonably failed to investigate and present to the jury available evidence that would have rebutted the testimony of Hilina Damte, the government's key witness, that she was beaten and kidnapped by Mr. Hashimi and ultimately escaped from Mr. Hashimi's car during the alleged kidnapping.

**Ground 3:** Trial counsel failed to investigate and challenge the validity of the search warrant of Mr. Hashimi's residence.  The warrant was obtained through FBI Special Agent Lenhart's affidavit in support of the warrant stating that the substance obtained during the July 29, 2015 controlled buy tested positive for cocaine – which was later disputed at trial by the government's forensic chemist.

**Ground 4:**  Trial counsel failed to investigate the source of the $8,100 found in a sock in Mr. Hashimi's residence at the time the FBI executed its infirm search warrant, which the government argued was evidence of Mr. Hashmi's drug enterprise.

**Ground 5:**  Trial counsel failed to interview and subpoena "Sharon," in order to rebut Ms. Damte's testimony regarding Mr. Hashimi's founding, organization, and control of the prescription fraud conspiracy. Trial counsel also failed to interview and subpoena individuals identified by Ms. Damte as Kentucky, Biggs, Primo, Homza, and Carver, who Ms. Damte testified were participants in Mr. Hashimi's drug distribution conspiracy.

10

**Ground 6:** Trial counsel failed to interview and subpoena an FBI informant who made a statement to the FBI in the fall of 2013, nearly three years prior to trial, that Mr. Hashimi had "no knowledge of Ms. Damte's "fraudulent prescription ring," which the informant stated she had organized and had been directing since 2011 or 2012, and that when he discovered the scheme that Mr. Hashimi was "angry with [it] being involved in this big drug conspiracy and keeping money from him."  4/15/16 Tr. 18-21.

**Ground 7:** Trial counsel failed to interview and subpoena fellow inmates of Mr. Hashimi who first introduced him to government witness Waheed Azimi in April 2016 at the Alexandria Detention Center.  These inmates would have confirmed that Mr. Hashimi did not know Mr. Azimi prior to their introduction of him to Mr. Azimi.

**Ground 8:**  Trial counsel failed to interview and subpoena confidential informant MW, the FBI's informant who conducted the two controlled drug buys.

**Ground 9:**  Trial counsel failed to subject the prosecution's case to meaningful adversarial testing when trial counsel failed to investigate, obtain, and present to the jury copies of Mr. Hashimi's federal tax returns for the years during the alleged conspiracies that would have shown that he filed federal income tax returns (*See* Mr. Hashimi's Affidavit ¶12), thereby rebutting the testimony of the prosecution's witness from the Virginia Employment Commission, Melvin Walker, that Mr. Hashimi had no employment in the Commonwealth during the years of the alleged conspiracies.

**Ground 10:**  Trial counsel also failed to subject the prosecution's case to meaningful adversarial testing when trial counsel failed to cross-examine the prosecution's FBI forensic accountant, Sandra Dovalina, who testified that Mr. Hashimi's bank records did show federal income tax refund deposits.

11

**Ground 11:**  Trial counsel failed to subject the prosecution's case to meaningful adversarial testing when trial counsel failed to prepare defense witness Mohamed Abubaker, who was originally scheduled as a government witness, but who, after the government decided not to call him, trial counsel decided at the last minute to call as a defense witness and who trial counsel interviewed for only five minutes prior to taking his testimony on behalf of the defendant. 9/27/16 Tr. 364-65.

**Ground 12:**  Trial counsel failed to subject the prosecution's case to meaningful adversarial testing when counsel failed to consult in any substantive way with the defendant on the preparation of his defense.

**Ground 13:**  Beyond the prejudicial effect of each instance of ineffectiveness of trial counsel identified above and the presumptive effect of each failure to subject the prosecution's case to meaningful adversarial testing, also described above, the cumulative effects of these failures denied Mr. Hashimi his constitutional guarantee of effective assistance of counsel.

**Conclusion**

None of the above-described grounds has been the subject of an appeal or other post-conviction proceeding, except that Mr. Hashimi's appellate counsel to the Fourth Circuit argued that there had been a breakdown in communication between Mr. Hashimi and trial counsel, which led to trial counsel being ineffective.  The Fourth Circuit held that the record does not reveal that any conflict between counsel and Mr. Hashimi existed that hindered the defense; rather, the appellate panel determined that many of Hashimi's concerns centered on the discovery process, issues that did not relate to Mr. Hashimi's communication with counsel. Accordingly, Ground 13 has not been presented on appeal but has been presented to this Court as it was raised with this Court throughout the proceedings of the case.

## ARGUMENT

## I.   MR. HASHIMI'S TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE

### A.  Relevant Legal Standard.

The Sixth Amendment of the United States Constitution guarantees each criminal defendant "the Assistance of Counsel for his defence" but this does not surrender control entirely to counsel." *McCoy v. Louisiana*, 135 S. Ct. 1500, 1503 (2018).  Trial management may be the domain of the lawyer, but autonomy to decide that the objective of the defense is to assert innocence belongs to the client. *Id.*  Autonomy to decide the objective of the defense is different than decisions of strategy; insisting on innocence even in the face of overwhelming evidence to the contrary is not a strategic choice about how to best achieve a client's objectives but rather a choice about what the client's objectives are. *Id.* at 1508.  "Presented with express statements of the client's will to maintain innocence . . . counsel may not steer the ship the other way. See *Gonzalez,* 553 U.S., at 254, 128 S. Ct. 1765 (Scalia, J., concurring in judgment) ("[A]ction taken by counsel over his client's objection . . . ha[s] the effect of revoking [counsel's] agency with respect to the action in question.")."  *Id.* at 1509-10.

Additionally, a question of a client's right to autonomy is decided differently than a complaint of counsel's competence. *Id.* at 1510-11.  Because the Sixth Amendment guarantees a right to secured autonomy, violation of that right is a structural error because it protects "the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." *Id.* at 1511. Counsel's admission of a client's guilt over the client's express objection blocks the defendant's right to make a fundamental choice about his own defense and requires that defendant be accorded a new trial without any need first to show prejudice.  *Id.*

13

### B.  Ground 1.

The evidence shows that during his closing argument to the jury, trial counsel – without Mr. Hashmi's consent – conceded Mr. Hashimi's guilt to Counts Three and Four and did not defend these counts.  While there had been considerable discussion among the parties and this Court throughout the proceedings of this case that Mr. Hashimi might be interested in pleading guilty to Counts Three and Four, at the Status Conference held on September 23, 2016, trial counsel advised this Court that he had conveyed each of the government's plea offers to Mr. Hashimi, and that Mr. Hashimi had rejected them all.  Trial counsel told this Court that Mr. Hashimi had declined all offers and would proceed to trial on all four counts.  "And this has been Mr. Hashimi's decision, Your Honor, and I have to abide by that, you know. . . . There have been numerous conversations of what was in his best interests. And this is the decision that Mr. Hashimi made." 9/23/16 Tr. 13.  This Court then advised Mr. Hashimi, "I find that the plea offers have been communicated to you. Mr. Johnson did extensive negotiations with substantial success on your behalf. And you rejected those plea offers. So that's a decision you made."  *Id.* at 14.  As the *McCoy* Court point out, quoting *Jae Lee v. United States,* 582 U.S. ——, ——, 137 S. Ct. 1958, 1969, (2017), "recognizing that a defendant might reject a plea and prefer 'taking a chance at trial' despite "[a]lmost certai[n]" conviction is the client's right.  *McCoy*, 138 S. Ct. 1508-09.  "When a client expressly asserts that the objective of '*his* defence' is to maintain innocence of the charged criminal acts, his lawyer *must abide* by that objective and may not override it by conceding guilt. U.S. Const. Amdt. 6 (emphasis added); *see* ABA Model Rule of Professional Conduct 1.2(a) (2016) (a "lawyer shall abide by a client's decisions concerning the objectives of the representation")." *Id.*

14

There is no question that at the Status Conference held the day before trial began, Mr. Hashimi made an express decision, a decision acknowledged by trial counsel and this Court, to go to trial on all four counts of the indictment, counts to which he had pleaded not guilty at his arraignment.  6/24/16 Tr. 2.  It is equally clear that after all of the negotiations on plea agreements which, as this Court noted, Mr. Hashimi had rejected, that trial counsel fully understood that he must *abide* by Mr. Hashimi's decision to maintain his innocence on all four counts.  Despite this understanding, an understanding that was confirmed again immediately prior to closing argument (*see* 9/28/16 Tr. 572-74), trial counsel still conceded Mr. Hashmi's guilt on Count Three and Four.  *See also*, Mr. Hashimi's Affidavit ¶5, confirming that he never provided trial counsel with permission to concede his guilt on Counts Three and Four.

Trial counsel's decision to concede Mr. Hashimi's guilt on Counts Three and Four cannot be deemed a strategic decision on trial counsel's part.  It is well-settled that the standard is not whether a particular decision by trial counsel was strategic but whether the decision was reasonable. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481, (2000). *Seer also Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006) (holding that performance is deficient where "counsel's choice was so patently unreasonable that no competent attorney would have made it.").

In this instance, the prosecution had argued throughout discussion regarding a plea that the four counts in this case should not be separated because they  were intrinsically entwined. 9/22/16 Tr. 23.  As the prosecutor stated, "[t]hose counts are intrinsically entwined to some extent. They were charged together for a reason." 9/28/16 Tr. 573.  This Court similarly pointed out during the Motions Hearing that the four counts were entwined:

It is part and parcel and intrinsic to the conspiracy to distribute the cocaine and
Oxycodone, and is powerful evidence that in fact he did control her activities, and
is completely consistent with what has been described to me part in the
pleadings and part here this morning as the Government's theory of the case and
the testimony that HD will provide.

9/22/16 Tr. 27.

Given the government's argument, an argument accepted by this Court, trial counsel's

concession to Counts Three and Four also effectively conceded Mr. Hashimi's guilt on Counts

One and Two.  Accordingly, trial counsel's concession simply belies logic and was patently

unreasonable, thereby depriving Mr. Hashimi of his constitutional protected Sixth Amendment

guarantees.

**II.     TRIAL COUNSEL'S PERFORMANCE FELL WELL BELOW THE RANGE
        EXPECTED OF REASONABLE, PROFESSIONAL COMPETENT ASSISTANCE
        OF COUNSEL SUCH THAT HIS DEFICIENT PERFORMANCE PREJUDICED
        MR. HASHIMI**

In numerous other instances, detailed below, Mr. Johnson's performance fell well below

the range expected of reasonable, professional, competent assistance of counsel such that his

deficient performance prejudiced Mr. Hashimi.  *See Strickland v. Washington*, 466 U.S. 668,

684-86 (1984).

Additionally, while several claims made in Mr. Hashimi's Motion are indicative of trial

counsel's comprehensive failure to provide Mr. Hashimi with effective assistance of counsel,

Mr. Hashimi's Motion also claims that Mr. Johnson failed to subject the prosecution's case to

meaningful adversarial testing, thereby also presumptively violating Mr. Hashimi's

constitutional Sixth Amendment guarantee.  *See United States v. Cronic*, 466 U.S. 648 (1984).

**A.  Relevant Legal Standards.**

**1.      Ineffective Assistance of Counsel.**  In *Strickland v. Washington*, 466 U.S. 668

(1984), the United States Supreme Court established a two-prong test that a habeas petitioner

16

must satisfy to determine whether an attorney was ineffective such that a new trial is warranted. The first prong—constitutional deficiency—"requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.  The first prong is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688).  To ascertain prevailing professional norms for attorney performance, reviewing courts look to professional standards such as those promulgated by the American Bar Association.  *Padilla*, 559 U.S. at 366–67; *Strickland*, 466 U.S. at 688.

In the second prong, the defendant must show that the deficient performance prejudiced the defense.  *Id*.  To meet the prejudice prong the defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  Importantly, and of express importance in this case, the prejudice prong does not require a defendant to prove that but for counsel's errors he or she would have been found *not guilty*, only that the outcome would have been different.  As the Supreme Court has emphasized, the standard is prophylactic.  Because a jury is required to reach a unanimous verdict on *each* count, the outcome of any trial could have differed if even "*one juror would have struck a different balance*." *Wiggins v. Smith*, 539 U.S. 510, 514 (2003) (emphasis added).  As the *Strickland* Court made clear, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined the proper functioning of the adversarial process* that the trial cannot be relied upon as having produced a just result." *Id.* at 686 (emphasis added).  The *Strickland* Court further held that "[u]nless a defendant makes

17

both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

### 2.    Failure to Investigate.

Courts have long held that reasonably competent counsel "imposes a correlative duty on defense counsel to undertake reasonable steps to investigate all avenues of defense." *Wood v. Zahradnick,* 578 F.2d 980, 982 (4th Cir.1978). "The principle is so fundamental that the failure to conduct a reasonable pretrial investigation may in itself amount to ineffective assistance of counsel. *United States v. Tucker*, 716 F.2d 576 n. 17 (9th Cir. 1983). *See also American Bar Association*, Standard 4-4.1 Duty to Investigate ("Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty.").

It is also well-settled that "in deciding whether trial counsel exercised reasonable professional judgment with regard to the investigation and presentation of mitigation evidence, a court [reviewing a habeas petition] must focus on whether the investigation resulting in counsel's decision not to introduce certain mitigation evidence was itself reasonable." *Wiggins*, 539 U.S. at 523; *see also Strickland*, 466 U.S. at 690-91. When making this assessment, 'a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.'" *Wiggins*, 539 U.S. at 527. As the Supreme Court has further explained, however, and of particular importance in the instant case, a court reviewing a habeas petition may not arrive at a conclusion that a *potential*

*trial strategy* was justified when counsel did not first "fulfill their obligation to conduct a thorough investigation." *Id.* at 522 (citing *Williams v. Taylor*, 529 U.S. 362, 396 (2003)) (emphasis added).

### 3.    Failure to Subject the Prosecution's Case to Meaningful Adversarial Testing.

In *United States v. Cronic*, the United States Supreme Court recognized three limited circumstances in which the *Strickland* prejudice test will not be applied, but rather that prejudice will be presumed from counsel's performance.  466 U.S. 648 (1984).  One such circumstance arises when "a defendant is represented by counsel at trial, but counsel 'entirely fails to subject the prosecution's case to meaningful adversarial testing.'"  *Id.* at 659.  Because these circumstances violate the fundamental principle of subjecting the prosecution's case to "the crucible of meaningful adversarial testing," the entire trial process in such an instance loses "its character as a confrontation between adversaries," and accordingly violate a defendant's constitutional Sixth Amendment guarantee.  *Id.* at 649.

### B.  Ground 2.

Trial counsel unreasonably failed to investigate and present to the jury available electronic evidence that would have rebutted the testimony of Hilina Damte, the government's key witness, that she was kidnapped and escaped from Mr. Hashimi's car during the alleged kidnapping.  T.  *See* Mr. Hashimi's Affidavit ¶6.  This evidence would further support the testimony of Detective Thomas M. Buckley, who testified that when he interviewed Damte at the hospital she told him it was Abubaker ("Baker") who had been hitting her, not Mr. Hashimi, and that she wanted Abubaker prosecuted. 9/27/16 Tr. 313.  This evidence is also consistent with the fact that Ms. Damte continued to live with Mr. Hashimi in a romantic relationship for over two years after the alleged kidnapping and assault.

19

Trial counsel also failed to subject the prosecution's case to meaningful adversarial testing with respect to the alleged kidnapping and domestic violence counts. The police executed a search warrant on the Lexus described to them by Ms. Damte and found blood in the car consistent with her account of having been beaten and taken away in the subject vehicle of the warrant. *Id.* at 311. Trial counsel did not ask Detective Buckley during cross-examination who owned the car that was searched. No evidence was presented at trial that the vehicle belonged to Mr. Hashimi or to Mr. Baker. No evidence was presented at trial or in the search warrants related to the trial that showed that Mr. Hashimi owned a Lexus. Trial counsel did not ask Detective Buckley if Mr. Baker had been released after he had been arrested in relation to the incident. 9/27/16 Tr. 225. Trial counsel did not ask Detective Buckley whether Mr. Hashimi had been arrested in relation to the incident in its immediate aftermath or during the two plus years between the kidnapping and assault and Mr. Hashimi's ultimate arrest in 2016 – and if not, why not. In fact, during cross-examination of Damte, trial counsel, in a misguided attempt to prove Ms. Damte a liar, actually implicated his client in the kidnapping and assault. "In fact, you even lied about Mr. Abubaker being involved and being the one that was hitting you even though you knew it may lead to Mr. Abubaker being prosecuted for something he didn't do; isn't that right?" 9/27/16 Tr. 224-25.

Dina Traitouros, Chris Bryant, and Jordan Taylor all testified at trial regarding the kidnapping and assault. 9/27/16 Tr. at 295-308; 318-335. Neither Ms. Traitouros nor Mr. Taylor, neither of whom had ever met Mr. Hashimi, were able to directly identify Mr. Hashimi as the assailant. *Id.* at 298; 305. Trial counsel did not subject either Ms. Traitouros or Mr. Taylor to cross-examination about the car or the specific assailant. Mr. Bryant testified that he

left the scene well before the assault, was some 50 yards away at the time of the attack, and immediately ran from the scene.  *Id.* at 322-23.

Trial counsel's failure to investigate the kidnapping and assault, and his failure to challenge the prosecution's witnesses regarding the incident demonstrate his failure to understand the details of the case against his client.  By failing to rebut Ms. Damte's testimony, in fact by supporting in part the government's case against his own client, trial counsel prejudiced Mr. Hashimi apparently without even grasping that he was doing so.

### C. Ground 3.

Trial counsel failed to investigate and challenge the validity of the government's search warrant executed at Mr. Hashimi's residence.  The affidavit in support the search warrant for Mr. Hashimi's residence, signed by FBI Special Agent Lenhart, states that the substance obtained by the confidential informant from Mr. Hashimi during the July 29, 2015 controlled buy tested positive for cocaine.  *See* Exhibit B at 30-31.  The prosecution's forensic expert testified that the white powdery substance recovered from the second controlled buy, which took place on July 29, 2015, "turned out to be a non-controlled substance."  9/27/16 Tr. 464-66.  Despite Detective Lenhart having prepared hundreds of reports in this case, conducted hundreds of hours of surveillance, listened to hundreds of hours of recordings, all allegedly involving Mr. Hashimi's involvement in the alleged drug conspiracies, this single sale was the only sale/purchase of any drug transaction that the FBI could show that directly involved Mr. Hashimi.  Accordingly, Mr. Hashimi was again prejudiced by trial counsel's failure to investigate the prosecution's evidence, which would have certainly provided grounds for challenging the validity of the search warrant.

Trial counsel also failed to subject the prosecution's case to meaningful adversarial testing when he failed to file a motion to suppress the evidence from the search warrant for lack

of probable cause, did not recall FBI Special Agent Lenhart, who sat at the prosecution's table throughout trial, to question him about his statement in the warrant following the testimony of the government's forensic chemist. It cannot be overstated that much of the prosecution's cocaine drug distribution conspiracy case, including the initial complaint against Mr. Hashimi and the arrest warrant for Mr. Hashimi relied upon this false statement in Special Agent Lenhart's affidavit.

### D.  Ground 4.

Trial counsel failed to investigate the source of the $8,100 found in a sock in Mr. Hashimi's residence at the time the FBI executed its search warrant of the residence. 9/27/16 Tr. 431-32. Notwithstanding the arguably infirmity of the search warrant, which would have rendered the money found in a sock at the residence inadmissible, had trial counsel investigated the source of the $8,100, he would have been able to show that it arose from a legitimate source. *See* Mr. Hashimi's Affidavit ¶7. This evidence would have refuted the prosecution's contention that the $8,100 belonged to Mr. Hashimi, which he had received in a drug sale and hidden in the laundry room next to his bedroom in his residence. This information also would have refuted the testimony of Ms. Damte during which she repeatedly testified that Mr. Hashimi kept drug money in socks which he hid or buried. 9/26/16 Tr. 134-35.

### E.  Ground 5.

Trial counsel failed to investigate and subject the government's case to meaningful adversarial testing when he failed to interview and subpoena the individual identified at trial by Ms. Damte as "Sharon" in order to rebut Ms. Damte's testimony regarding Mr. Hashimi's organization and control of the conspiracy.

Contrary to Ms. Damte's testimony that she met "Sharon" through Mr. Hashimi and that "Sharon" was Mr. Hashimi's person inside the dentist office who provided her with false

prescriptions at Mr. Hashimi's direction, Mr. Hashimi did not know and has never met "Sharon." *See* Mr. Hashimi's Affidavit ¶8.  Counsel's failure to investigate "Sharon" and to challenge the government's case directly prejudiced Mr. Hashimi because much of the government's conspiracy case against Mr. Hashimi relied upon Ms. Damte's testimony that he was the originator and leader of the fraudulent prescription scheme.

Additionally, had trial counsel interviewed and subpoenaed Kentucky, Biggs, Primo, Homza, and Carver, who Ms. Damte testified were regular buyers of drugs from Mr.  Hashimi; none of whom, including Mr. Hashimi, were involved together in a drug distribution conspiracy. *See* Mr. Hashimi's Affidavit at ¶9.  Counsel's failure to investigate and subpoena these individuals to rebut Ms. Damte's testimony, and to challenge the government's conspiracy to distribute drugs case against Mr. Hashimi, directly prejudiced Mr. Hashimi because the government's conspiracy to distribute cocaine relied in substantial part on Ms. Damte's testimony that he conspired with these individuals to distribute cocaine.

## F.  Ground 6.

Trial counsel failed to investigate and subject the government's case to meaningful adversarial testing when he failed to interview and subpoena the FBI informant identified by FBI Agent Laura Walker at Mr. Hashimi's Preliminary and Detention Hearing on April 15, 2016. Detective Walker testified at the hearing that three years prior to Mr. Hashimi's arrest, the confidential informant, identified in an FBI 302 report of its investigation in this case, had stated that Ms. Damte had founded and organized the fraudulent prescription scheme, that Mr. Hashimi did not know of the scheme, that Ms. Damte was keeping receipts from fraudulent prescription sales a secret from Mr. Hashimi, and that Mr. Hashimi did not know she was hiding these receipts.  4/15/16 Tr. 18-21.

23

### G.  Ground 7.

Trial counsel failed to interview and subpoena the inmates at the Alexandria Detention Center who introduced Mr. Hashimi to government witness Waheed Azimi for the first time. *See* Mr. Hashim's Affidavit at ¶10.  Mr. Azimi testified that he had known Mr. Hashmi from 2013 and that he had bought drugs from him.  9/27/16 Tr 389-95.  Trial counsel's failure to interview and subpoena these inmates prejudiced Mr. Hashimi because their testimony would have rebutted the assertion that Mr. Hashimi had sold Mr. Azimi's cocaine years ago and that on one occasion a friend of Mr. Hashimi's had brandished a weapon during a drug transaction. 9/27/16 Tr. 394.

### H.  Ground 8.

Trial counsel failed to interview and subpoena confidential informant MW, the FBI's informant who conducted the two controlled drug buys who was a long-time friend of Mr. Hashimi.  *See* Mr. Hashimi's Affidavit at ¶11.  Despite Detective Lenhart having prepared hundreds of reports in this case, conducted hundreds of hours of surveillance, listened to hundreds of hours of recordings, all allegedly involving Mr. Hashimi's involvement in the alleged drug conspiracies, this single sale to MW was the only sale/purchase of any drug transaction that the FBI could show that directly involved Mr. Hashimi.  In fact, Mr. Hashimi was not indicted on possession of any drugs, only of the two drug related conspiracies to distribute.  Trial counsel's failure to subpoena MW to establish his long time drug abuse and friendship with Mr. Hashimi failed to subject the prosecution's case to meaningful adversarial testing that would have challenged the FBI's allegations that Mr. Hashimi had long-organize and directed alleged drug conspiracies that involved massive amounts of cocaine and over 30,000 pills of oxycodone.

### I.  Ground 9.

Trial counsel failed to subject the prosecution's case to meaningful adversarial testing when counsel failed to investigate, obtain, and present to the jury copies of Mr. Hashimi's federal tax returns for the years during the alleged conspiracies that would have shown that he filed federal income tax returns for 2011, 2012, and 2014, thereby rebutting the prosecution's Virginia Employment Commission witness, Melvin Walker, that Mr. Hashimi had no employment in the Commonwealth during the years of the alleged conspiracies – a condition the prosecution asserted was common to drug dealers like Mr. Hashimi.  9/26/16 Tr. 79, 128, 34, 142, 158.

### J.  Ground 10.

Trial counsel also failed to subject the prosecution's case to meaningful adversarial testing when counsel failed to cross-examine the prosecution's FBI forensic accountant, Sandra Dovalina, who testified that Mr. Hashimi's bank records did show federal income tax refund deposits.  Cross-examination of Mr. Dovalina regarding Mr. Hashimi's federal tax refunds would have further rebutted the prosecution's Virginia Employment Commission witness, Melvin Walker, that Mr. Hashimi had no employment in the Commonwealth during the years of the alleged conspiracies, a condition the prosecution claimed was common to drug dealers like Mr. Hashimi.

### K.  Ground 11.

Trial counsel failed to subject the prosecution's case to meaningful adversarial testing when counsel failed to prepare defense witness Mohamed Abubaker.  Mr. Abubaker, the younger brother of Mr. Abubaker Abubaker, "or Baker," the individual involved in the assault of Ms. Damte on November 8, 2013, was originally scheduled as a government witness, who the

government ultimately decided not to call.  At the last minute, trial counsel then decided to call

Mr. Abubaker as a defense witness but only interviewed him for five minutes prior to taking his

testimony.  9/27/16 Tr. 364-65.  During his testimony. Mr. Abubaker testified that he was

confronted by Mr. Hashimi's friend, Mr. Auk, and threatened by Mr. Auk, who may have been

armed, and who may have been sent by Mr. Hashimi to collect money owed to Mr. Hashimi by

Mr. Abubaker. 9/28/16 Tr. 558-60.  By not having investigated the circumstances surrounding

Mr. Abubaker's involvement in the fraudulent drug prescription scheme and not properly

preparing his testimony, Mr. Abubaker's testimony prejudiced Mr. Hashimi by portraying Mr.

Auk as Mr. Hashimi's enforcer in terms of collecting a debt owed to Mr. Hashimi, statements

that were unsupported elsewhere in the record of the case.

### L.  Ground 12.

Trial counsel failed to subject the prosecution's case to meaningful adversarial testing

when counsel failed to consult in any substantive way with the defendant on the preparation of

his defense.  At no point in advance of trial did trial counsel consult with Mr. Hashimi about the

details of his case or discuss with him a theory of his defense.  *See* Mr. Hashimi's Affidavit ¶13.

Based upon the record, trial counsel had discovery within days of his appointment as Mr.

Hashimi's counsel and had months to become familiar with the case; yet, on the eve of trial he

still did not have a grasp of the details of the case. "My concern, Your Honor, is that -- and I

have been reviewing discovery for the last couple months. That I didn't have the names or the

context of how the names interplayed until a week ago. Although I could go and look at

discovery previously, everybody's name is blacked out. So, you could get a rough picture, but not

a full picture."  9/22/16 Tr. 2-3.  Accordingly, trial counsel had asked to continue the trial only

four days before it was scheduled to begin.  *Id.*  Had trial counsel consulted with his client,

26

reviewed the discovery with him, and discussed a defense theory during the months prior to trial when he was in possession of the discovery from the government, he would have been able to investigate the items detailed *supra*, that he did not investigate, and further, would have been able to interview and subpoena witness in order to subject the prosecution's case to meaningful adversarial testing.  Having undertaken none of these steps, trial counsel's failure to consult with Mr. Hashimi and to thoroughly prepare for trial resulted in the numerous claims identified *supra* that demonstrate that his performance fell well below the range expected of reasonable, professional competent assistance of counsel such that his deficient performance prejudiced Mr. Hashimi.  Additionally, trial counsel's failure to subject the prosecution's case to meaningful adversarial testing, demonstrated *supra*, presumptively violated Mr. Hashimi's constitutional Sixth Amendment guarantee to effective counsel.

### M. Ground 13.

Beyond the prejudicial effect of each failure and the presumptive effect of each failure to subject the prosecution's case to meaningful adversarial testing, described above, the cumulative effects of these failures denied Mr. Hashimi his constitutional guarantee of effective assistance of counsel.  When counsel's performance is deficient in various instances, a defendant can establish prejudice from the cumulative effect of the errors. *United States v. Russell*, 34 Fed. Appx. 927, 928 (4th Cir. 2002); *United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009) ("Pursuant to the cumulative error doctrine, '[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error.' *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990), *cited with approval in United States v. Martinez*, 277 F.3d 517, 532 (4th Cir. 2002).)." That is certainly the case here.

## CONCLUSION

For the reasons addressed above, it is respectfully requested that Mr. Hashimi's convictions and sentences be vacated.

Dated: September 30, 2020

_____/s/_____
David Benowitz
VSB # 91194
Price Benowitz LLP
409 Seventh Street, NW
Suite 200
Washington, DC  20004
(202) 271-5249 (c)
(202) 664-1331 (f)
david@pricebenowitz.com

*Counsel for Petitioner Ahmad Sayed Hashimi*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of September 2020, I caused a true and correct copy of the foregoing Memorandum of Law in Support of Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence By a Person in Federal Custody, Pursuant to 28 U.S.C. § 2255to be delivered via CM/ECF to all parties in this case.

_____/s/_____
David Benowitz